UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM MIX, | CASE NO. C17-0699JLR |
| Plaintiff, | ORDER ON MOTION TO |
| v. | DISMISS OR TO STAY |
| OCWEN LOAN SERVICING, LLC, | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant Ocwen Loan Servicing, LLC's ("Ocwen") motion to dismiss Plaintiff William Mix's amended complaint or to stay the case.  (Mot. (Dkt. # 24).)  The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law.

//

//

//

Being fully advised,[1] the court GRANTS in part and DENIES in part Ocwen's motion to dismiss or to stay for the reasons set forth below.

## II.    BACKGROUND

This case involves allegations that Ocwen used an automatic telephone dialing system ("ATDS") to call Mr. Mix's cell phone at least 1,346 times between 2011 and 2016 to collect a consumer debt.  (Am. Compl. (Dkt. # 18) ¶¶ 28, 32, 35.)  Mr. Mix alleges that he received many of the calls after 9:00 p.m.  (*Id.* ¶ 33.)  Mr. Mix asserts that even though as early as the fall of 2011 he expressly revoked any consent he had given for receiving the calls, Ocwen continued to call Mr. Mix's cell phone.  (*Id.* ¶¶ 34, 36.)  Mr. Mix alleges that the calls negatively affected him by causing him frustration and distress; disrupting his "daily activities and the peaceful enjoyment of [his] personal and professional life," including his ability to use his cell phone; causing him to become depressed and withdrawn; and intruding upon his relationships with "close family members."  (*Id.* ¶¶ 40-42.)

Based on these facts, Mr. Mix brings claims for (1) negligent violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; (2) knowing and/or willful violation of the TCPA; and (3) negligence under Washington law.  (*Id.* ¶¶ 43-57.)  He seeks statutory damages of $500.00 for each negligent violation of the TCPA, statutory damages of $1,500.00 for each knowing or willful violation of the TCPA, a permanent injunction preventing Ocwen from further communicating with him

---

[1] Neither party requests oral argument, and the court determines that oral argument would not be helpful to its disposition of the motion.  Local Rules W.D. Wash. LCR 7(b)(4).

in a way that violates the TCPA, common law damages, and attorneys' fees and costs. (*Id.* at 9 (prayer for relief).)  Mr. Mix asserts that the statute of limitations is tolled on his negligence claim based on a pending federal class action, *Snyder v. Ocwen Loan Servicing, LLC*, No. 1:14-cv-8461 (N.D. Ill.).  (*Id.* ¶ 5.)

## III.    ANALYSIS

Ocwen seeks dismissal of the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) or a stay of the action pending the United States Circuit Court for the District of Columbia's decision in *ACA International v. Federal Communications Commission*, No. 15-1211 (D.C. Cir.) (hereinafter, "*ACA International*").  (Mot. at 1.) Ocwen argues that Mr. Mix's state law negligence claim fails because it is time-barred (*id.* at 4-6) and the TCPA does not provide a duty of care for such a claim (*id.* at 6-7). Ocwen also argues that Washington law does not allow punitive damages in this instance. (*Id.* at 7-8.)  Ocwen further argues that Mr. Mix's TCPA claims fail because Mr. Mix fails to allege a concrete injury related to Ocwen's use of an ATDS.  (*Id.* at 8-10.) Finally, Ocwen in the alternative contends that the court should stay the case because the D.C. Circuit will decide two issues "central to this action":  (1) "whether equipment constitutes an ATDS if it merely has the potential to randomly or sequentially generate telephone numbers to be dialed," and (2) "whether the [Federal Communications Commission] unlawfully imposed an unworkable regime for handling revocation of consent by ruling that any revocation, whether verbal or written, would be sufficient so long as it was 'reasonable' under the circumstances."  (*Id.* at 11.)

//

Because Ocwen challenges Mr. Mix's standing to assert a TCPA violation—and therefore implicates the court's subject matter jurisdiction—the court first addresses that issue.

## A.    Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies,'" which requires a plaintiff to have standing.[2] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 407 (2013); *see also Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). To establish standing, a plaintiff must demonstrate three elements: (1) a "concrete, particularized, and actual or imminent" injury that is (2) "fairly traceable to the challenged action" and (3) "redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). These requirements are more succinctly referred to as injury, causation, and redressability. *Nw. Immigrant Rights Project v. United States Citizenship & Immigration Servs.*, --- F.R.D. ----, 2016 WL 5817078, at *6 (W.D. Wash. Oct. 5, 2016).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 136 S. Ct. at 1547. When "a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). When a motion to dismiss attacks

---

[2] Although Ocwen moves for dismissal only under Federal Rule of Civil Procedure 12(b)(6) (*see* Mot. at 8-10), Federal Rule of Civil Procedure 12(b)(1) provides the procedural vehicle for a motion challenging the court's subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1).

the court's subject matter jurisdiction based on the face of the complaint, "the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor." *City of L.A. v. JPMorgan Chase & Co.*, 22 F. Supp. 3d 1047, 1052 (C.D. Cal. 2014).

Ocwen argues that Mr. Mix has not adequately pleaded a concrete injury, instead alleging only a bare procedural violation. (*See* Mot. at 8 (citing *Ewing v. SQM US, Inc.*, 211 F. Supp. 3d 1289, 1292 (S.D. Cal. 2016); *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016)).) Mr. Mix counters that "the Ninth Circuit has long recognized and affirmed the TCPA's congressional purpose to protect telephone consumers from the nuisance and privacy invasion of . . . automated or prerecorded calls." (Resp. at 10.)

To establish an injury in fact, Mr. Mix must show that he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is concrete if it "actually exist[s]."[3] *Id.* Because of these constitutional requirements, a plaintiff does not automatically demonstrate an injury "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

Since the Supreme Court's ruling in *Spokeo*, a number of courts in the Ninth Circuit have addressed what a plaintiff must plead to allege a concrete injury in a TCPA

---

[3] Ocwen does not contest that Mr. Mix's alleged injury is particularized. (*See* Mot. at 8-10.)

action. Ocwen relies on two of those cases—*Ewing* and *Romero*. (*See* Mot. at 8.) In *Ewing*, the court concluded that the plaintiff had not adequately alleged a concrete injury because the defendants' "use of an ATDS to dial [the plaintiff's] cellular phone number" did not cause injury beyond what the plaintiff "would have incurred had [the d]efendants manually dialed his number, which would not have violated the TCPA." 211 F. Supp. 3d at 1293. The court further stated that the plaintiff "would have had to expend the same amount of time answering and addressing [the d]efendants' manually dialed telephone call and would have incurred the same amount of battery depletion." *Id.* The court in *Romero* reached the same conclusion because the plaintiff who asserted TCPA violations against a debt collector "would have been no better off had [the d]efendants dialed her telephone number manually."[4] 199 F. Supp. 3d at 1265.

//

---

[4] *Romero* also held that "[e]ach alleged violation [of the TCPA] is a separate claim, meaning that Plaintiff must establish standing for each violation, which in turn means that Plaintiff must establish an injury in fact caused by each individual call." 199 F. Supp. 3d at 1261. Here, Mr. Mix's allegations plausibly support a concrete injury from each call because he alleges that they were a nuisance, an invasion of privacy, and an expense. (Am. Compl. ¶ 20.) Mr. Mix does not allege that the totality of the calls caused the injuries of which he complains. (*See generally id.*) Accordingly, the court finds that Mr. Mix's allegations are sufficient to establish standing for each call alleged. *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1148 (D.N.M. 2016) (stating that the number of calls that the plaintiff answered and the times at which the defendant made the calls "are issues that should be resolved on summary judgment or at trial, based on the available evidence, but are not appropriate for the threshold stage of jurisdictional dismissal based on standing"); *DeClue v. United Consumer Fin. Servs. Co.*, No. 16cv2833 JM (JMA), 2017 WL 1400144, at *3 (S.D. Cal. Apr. 19, 2017) (stating that "[a]ny factual issue regarding the manner in which the calls were placed" should be resolved on summary judgment or at trial); *cf. Romero*, 199 F. Supp. 3d at 1262 ("Although a defendant violates the TCPA by dialing a cell phone with an ATDS, it is possible that the recipient's phone was not turned on or did not ring, that the recipient did not hear the phone ring, or the recipient for whatever reason was unaware that the call occurred.").

However, a number of other courts in the Circuit—including this court—have rejected that reasoning. *See, e.g.*, *DeClue v. United Consumer Fin. Servs. Co.*, No. 16cv2833 JM (JMA), 2017 WL 1400144, at *2 (S.D. Cal. Apr. 19, 2017) ("By relying almost exclusively on *Romero* and *Ewing*, Defendant ignores the overwhelming weight of authority that contradicts those cases."); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016). Indeed, the vast majority of courts that have addressed the question have concluded that invasion of privacy, disruption of solitude and private life, and wasted time dealing with the calls are concrete injuries. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (holding that "the telemarketing text messages at issue here . . . present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA" and stating that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients"); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-cv-05486-JCS, 2017 WL 733123, at *7 (N.D. Cal. Feb. 24, 2017) (concluding that the plaintiff had sufficiently alleged a concrete injury based on "an intrusion on [its] occupation and capacity of its cell phones and waste of time"); *Quinones v. Ocwen Loan Servicing, LLC*, --- F.3d ----, 2017 WL 4641083, at *2 (C.D. Cal. Oct. 16, 2017) (holding that allegations of invasion of privacy, frustration, distress, disruption of daily activities, and intrusion on one's personal and professional lives are "sufficiently concrete to confer Article III standing"); *see also Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 644-45 (N.D. W.Va. 2016) (describing intangible injuries from alleged TCPA violations as invasion of privacy,

intrusion upon the capacity of the plaintiff's cell phone, wasting the plaintiff's time, and causing a risk of personal injury from interruption and distraction). In particular, this court has previously determined that an alleged TCPA violation was sufficiently concrete because it "required [p]laintiffs to waste time answering or otherwise addressing widespread robocalls." *Booth*, 2016 WL 3030256, at *5. Moreover, the *Ewing* and *Romero* decisions are "draconian," making it "almost impossible to allege a harm as a result of calls using an ADTS." *See LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1143 (D.N.M. 2016) ("Under *Romero*, it appears to be nearly impossible for a plaintiff to allege a private right of action under the TCPA for automated solicitation calls.").

Here, Mr. Mix alleges that Ocwen's calls were a nuisance and invasion of his privacy and caused him expense, frustration, and distress. (Am. Compl. ¶¶ 20, 40-42.) Those allegations sufficiently demonstrate a concrete injury in fact for Article III standing. For this reason, the court denies Ocwen's motion to dismiss Mr. Mix's TCPA claims for lack of subject matter jurisdiction.[5]

**B.     Failure to State a Claim**

The court next addresses Ocwen's arguments under Federal Rule of Civil Procedure 12(b)(6). Ocwen moves to dismiss Mr. Mix's state law negligence claim as

---

[5] Ocwen does not challenge the sufficiency of Mr. Mix's factual allegations regarding the TCPA claims outside the context of Article III's concrete injury requirement. (*See, e.g.*, Mot. at 10 (stating that Mr. Mix "makes only confusing boilerplate statements referencing standing and harm in connection with his claims, and attempts to plead around the *Spokeo* requirements with conclusory allegations, which are insufficient to demonstrate standing").

time-barred and because the TCPA provides no duty of care to support a negligence cause of action.[6]  (Mot. at 4-7.)  The court analyzes each of these arguments in turn.

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Although a plaintiff does not have to make "detailed factual allegations," a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, a complaint must include sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Under Rule 12(b)(6), the court can dismiss a complaint based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must therefore

---

[6] Ocwen also argues that Mr. Mix's request for punitive damages fails because Washington law generally does not permit that type of damages.  (*Id.* at 7-8.)  Mr. Mix contends that he "makes no allegations of punitive damages" in his complaint.  (Resp. at 2 n.1.)  The amended complaint's prayer for relief requests, among other forms of relief, "[a]ctual, special, general, and compensatory damages" but not punitive damages.  (Am. Compl. at 9.)  Because Mr. Mix's complaint does not request—or even address—punitive damages, the court declines to address this issue further other than to note that Ocwen may have moved on this basis because Mr. Mix requested punitive damages in his original complaint.  (*See* Compl. (Dkt. # 1) at 9.) However, he omits that request from his amended complaint.  (*See* Am. Compl.)

accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

    1. <u>Statute of Limitations</u>

    Ocwen contends that any calls before May 4, 2014, are barred by Washington's three-year statute of limitations because the Illinois federal class action does not toll Mr. Mix's Washington state law negligence claim.[7] (Mot. at 4-6.) Mr. Mix argues that "[s]uch tolling arguments are premature and do not warrant dismissal of the negligence claim given that [Mr. Mix's] allegations expressly include injuries within the statute of limitations, regardless of any tolling." (Resp. at 6.) Nevertheless, Mr. Mix argues that tolling is appropriate here because even though the Illinois federal class action did not involve a negligence claim, the claims he now brings need not be identical to those claims involved in the class action. (*Id.*)

    "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)). For a negligence claim, Washington law imposes a three-year statute of limitations. RCW 4.16.080(2); *see also Woods View II, LLC v. Kitsap Cty.*, 352 P.3d 807, 816 (Wash. Ct. App. 2015). However, "[i]n some instances, a

---

[7] Ocwen does not argue that Mr. Mix's TCPA claims are time-barred. (*See* Mot.)

plaintiff can rely on the filing of a prior class action to vindicate the right in question and toll the statute in the event that the class is not ultimately certified." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-52 (1983). The rule "allows tolling within the federal court system in federal question class actions" and "does not mandate cross-jurisdictional tolling as a matter of state procedure."[8] *Clemens*, 534 F.3d at 1025. Whether the doctrine applies to state law claims depends on whether the state has allowed such cross-jurisdictional tolling. *Id.* (noting that "several federal courts have declined to import the doctrine into state law where it did not previously exist"). For state law claims, the court must apply Washington law to the statute of limitations and the issue of tolling. *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1015 (C.D. Cal. Jan. 2011); *see also Coe v. Philips Oral Healthcare Inc.*, No. C13-0518MJP, 2014 WL 5162912, at *5 (W.D. Wash. Oct. 14, 2014) ("When a state legal system is unclear on cross-jurisdictional tolling[, f]ederal courts do not generally introduce a rule.").

Washington courts do not appear to have addressed whether cross-jurisdictional tolling applies under Washington law. *See, e.g.*, *Pickett v. Holland Am. Line-Westours, Inc.*, 35 P.3d 351, 359 (Wash. 2001) (addressing *American Pipe* but not whether

---

[8] "The Ninth Circuit used the phrase cross-jurisdictional tolling to refer to situations where a class action is filed in another jurisdiction." *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1016 (C.D. Cal. Jan. 2011).

cross-jurisdictional tolling applies); *Columbia Gorge Audobon Soc'y v. Klickitat Cty.*, 989 P.2d 1260, 1264 (Wash. Ct. App. 1999) (same). Indeed, the parties' briefing on the issue focuses on the other side's failure to show definitively that Washington law does or does not permit cross-jurisdictional tolling. (*See* Resp. at 6 ("[Ocwen] fails to provide any authority that tolling under *American Pipe* does not apply to Washington state law claims."); Reply (Dkt. # 26) at 2 (stating that Mr. Mix's "[o]pposition offers no reason why he should receive the benefit of *American Pipe* tolling")).) In the absence of a clear rule permitting such tolling, the court declines to "introduce" the rule here.[9] *Coe*, 2014 WL 5162912, at *5. However, the three-year statute of limitations applies only to bar Mr. Mix's negligence claim as to those calls occurring before May 4, 2014. (*See* Am. Compl. ¶¶ 28, 32 (alleging at least 1,346 calls between April 2, 2011, and early 2016); Resp. at 5 ("Because [Mr. Mix] filed his complaint on May 4, 2017, at the very least, any injuries that occurred after May 4, 2014[,] fall squarely within the statute of limitations.").) Thus, the court grants the motion to dismiss for calls occurring before May 4, 2014, but declines to dismiss Mr. Mix's negligence claim for any calls occurring within the applicable limitations period.[10]

//

[9] In this regard, Mr. Mix's argument regarding the identity of claims misses the mark. (*See* Resp. at 6.) The question is not whether the federal class action in Illinois involved claims similar enough to those claims Mr. Mix asserts here. Rather, the question is whether Washington law allows cross-jurisdictional tolling. *See Clemens*, 534 F.3d at 1025.

[10] The court rejects Mr. Mix's argument that addressing tolling at this stage is premature. (Resp. at 6.) Mr. Mix squarely asserts the tolling doctrine articulated in *American Pipe*, thus putting the issue before the court. (Am. Compl. ¶ 5.)

1    2. <u>Duty</u>

2    Ocwen also challenges Mr. Mix's negligence claim on the grounds that "the

3    TCPA does not provide a duty of care sufficient for a negligence cause of action." (Mot.

4    at 6.) However, Mr. Mix "does not request that the [c]ourt impose the TCPA as the

5    standard of care, but rather alleges that [Ocwen] owed a duty 'to exercise reasonable skill

6    and care in carrying out account activities' and 'act reasonably when collecting an

7    alleged debt." (Resp. at 9 (quoting Am. Compl. ¶ 53).) Thus, the court addresses only

8    whether Ocwen owed Mr. Mix a common law duty.

9    Under Washington law, to state a claim for negligence, Mr. Mix must adequately

10   allege facts demonstrating "(1) the existence of a duty to the plaintiff, (2) a breach of that

11   duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury."

12   *Degel v. Majestic Mobile Manor*, 914 P.2d 728, 731 (Wash. 1996). A duty of care is "an

13   obligation, to which the law will give recognition and effect, to conform to a particular

14   standard of conduct toward another." *Affiliated FM Ins. Co. v. LTK Consulting Servs.,*

15   *Inc.*, 243 P.3d 521, 526 (Wash. 2010) (internal quotation marks omitted). "Duty in a

16   negligence action is a threshold question" and "may be predicated 'on violation of statute

17   or of common law principles of negligence.'"[11] *Jackson v. City of Seattle*, 244 P.3d 425,

18   428 (Wash. Ct. App. 2010) (quoting *Burg v. Shannon & Wilson, Inc.*, 43 P.3d 526, 530

19

20   _____

       [11] In Washington, the violation of a statute or the breach of a statutory duty is not
21   considered negligence per se, but may be considered by the trier of fact as evidence of
     negligence. *See* RCW 5.40.050 ("A breach of a duty imposed by statute, ordinance, or
     administrative rule shall not be considered negligence per se, but may be considered by the trier
22   of fact as evidence of negligence . . . .").

(Wash. Ct. App. 2002)); *Alhadeff v. Meridian on Bainbridge Island, LLC*, 220 P.3d 1214, 1222 (Wash. 2009) (same).

Mr. Mix alleges that Ocwen owed him a duty of care "to exercise reasonable skill and care in carrying out account activities," which included the duty "to act reasonably when collecting an alleged debt . . . , including the means and methods for contacting" Mr. Mix. (Am. Compl. ¶ 53.) Although this duty as framed is vague, Mr. Mix's factual allegations regarding Ocwen's collection activities indicate that his negligence claim is one for emotional distress.[12] (*See id.* ¶¶ 40-42, 54-55.) The Washington Supreme Court has "articulated a broad and general duty not to inflict emotional distress," but narrows the duty "by applying traditional negligence principles."[13] *Keates v. City of Vancouver*,

---

[12] The court has not identified any Washington law definitively stating that a debt collector or loan servicer owes a duty of reasonable care in the collection of a debt. Although the existence of a duty is a legal question, the court notes that Mr. Mix cites no Washington authority establishing such a duty. (*See* Resp. at 8 (citing cases from New York, Kansas, California, Georgia, and Mississippi).) In addition, Mr. Mix's complaint does not clearly allege which role—debt collector or loan servicer or both—Ocwen was operating in when it allegedly acted negligently. (*See* Am. Compl.; Resp. at 8 (addressing cases from other jurisdictions involving both debt collectors and loan servicers).) Finally, although Mr. Mix invokes in his response RCW 19.16.250(13)(c) and 16 CFR § 310.4(c) (Resp. at 9), his complaint fails to adequately allege facts related to a duty arising from the statute and regulation (Am. Compl. ¶¶ 28-42); *see also Barrett v. Lucky Seven Saloon, Inc.*, 96 P.3d 386, 390 (Wash. 2004) (In deciding "whether violation of a public law or regulation shall be considered in determining liability," courts turn to the Restatement (Second) of Torts § 286.). Thus, to the extent Mr. Mix alleges a general negligence claim not based on emotional distress, his claim fails. However, the court grants Mr. Mix leave to amend his negligence claim as set forth below.

[13] Although Mr. Mix also includes factual allegations regarding intrusion of his privacy, the court does not consider those allegations in ruling on the duty question because intrusion of privacy is an intentional tort which Mr. Mix has not alleged. *See Fisher v. States ex rel. Dep't of Health*, 106 P.3d 836, 840 (Wash. Ct. App. 2005) ("Invasion of privacy by intrusion consists of a deliberate intrusion, physical or otherwise, into a person's solitude, seclusion, or private affairs. . . . Intent is thus an essential element."); (Am. Compl. ¶¶ 43-57 (alleging only TCPA and negligence claims).)

869 P.2d 88, 93 (Wash. Ct. App. 1994) (citing *Hunsley v. Giard*, 553 P.2d 1096 (Wash. 1976)).  Thus, the duty is cabined by "whether the conduct in question is unreasonably dangerous."  *Id.*; *see also Michaels v. CH2M Hill, Inc.*, 257 P.3d 532, 543 (Wash. 2011) (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 7(a) (2010) ("'An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.'")); *see also* 16 Wash. Prac., Tort Law & Prac. § 2:2 (4th ed. 2013) ("In general, a duty to use reasonable care will be imposed if one of two conditions obtains:  (1) where the defendant engages in conduct that poses a risk of injury to the plaintiff; or (2) where the defendant's conduct did not itself pose a risk of harm to the plaintiff, but the defendant is found to have a duty to prevent the injury to the plaintiff . . . .").  "Unless the defendant's conduct is unreasonably dangerous, the defendant owes no duty."  *Keates*, 869 P.2d at 93.

Here, the facts Mr. Mix alleges are insufficient to give rise to a duty.  Mr. Mix's allegations that Ocwen called him "hundreds of times" over the course of five years and "infringe[d] on [his] privacy rights" (Am. Compl. ¶ 54) do not support a reasonable inference that Ocwen engaged in unreasonably dangerous conduct creating a risk of harm, *see Michaels*, 257 P.3d at 543; *Keates*, 869 P.2d at 93.  In addition, Mr. Mix's allegation that Ocwen made the calls to "harass or abuse" him are conclusory assertions that do not give rise to a plausible inference of a duty.  *See Iqbal*, 556 U.S. at 678 (stating that a complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  For these reasons, Mr. Mix fails to state a claim for negligence, and the court grants Ocwen's motion to dismiss.

### 3. Leave to Amend Negligence Claim

The court's dismissal of Mr. Mix's negligence claim is without prejudice, however, because the court cannot conclude that amendment of that claim would be futile.[14]  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (stating that the considerations in determining whether to grant leave to amend are (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended its pleading).  If Mr. Mix sufficiently alleges unreasonable conduct, his negligence claim may proceed at this stage. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("A claim in a proposed amended complaint is futile if it would be immediately subject to dismissal pursuant to Rule 12(b)(6) . . . for failure to state a claim . . . .").  In addition, Mr. Mix's single previous amendment as a matter of course does not warrant denying further amendment.[15]  (*See* Compl.; Am. Compl.); Fed. R. Civ. P. 15(a)(1) (stating the requirement for amendment as a matter of course).  Nevertheless, Mr. Mix will not have unlimited opportunities to cure deficiencies in his complaint.  *See McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996).  Finally, the court notes that Mr. Mix's leave to amend extends only to factual allegations related to his negligence claim and falling within the

---

[14] Neither party addresses leave to amend in their briefing.  (*See generally* Mot.; Resp.; Reply.)

[15] The court also finds that there is no evidence of undue delay, bad faith, or prejudice, particularly where this case is still in its early stages.  (*See* Dkt.)

ORDER - 16

three-year statute of limitations.  He may not amend his complaint in any other manner, including by stating additional factual allegations related to the TCPA claims or adding new claims.

**C.      Motion to Stay**

Ocwen also moves to stay the action pending proceedings before the D.C. Circuit in *ACA International*, arguing that the Circuit is considering two issues "central" to this case and that its ruling "could be dispositive of [Mr.] Mix's TCPA claims."  (Mot. at 11.) Mr. Mix opposes the request, arguing that a stay will prejudice him and that Ocwen has not demonstrated hardship or inequity from having to move forward with the case at this time.  (Resp. at 11-13.)  Both parties cite numerous cases in which district courts have addressed a stay pending the D.C. Circuit's decision in *ACA International*.  (*See id.* at 19; Mot. at 12-13.)

To ultimately prove his TCPA claims, Mr. Mix must demonstrate that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012).  In *ACA International*, the D.C. Circuit is considering, among other things, the definition of an ATDS and the phrase "prior express consent," which Mr. Mix's TCPA claims implicate.  *See ACA International*, No. 15-1211, Dkt . # 1; (Am. Compl.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In

determining whether to issue a stay, "the competing interests which will be affected by the . . . stay must be weighed." *Lockyer*, 398 F.3d at 1110; *Landis*, 299 U.S. at 254-55 (stating that entering a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").  Those interests include:  (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *Id.*

The first factor favors denying a stay.  Ocwen asserts that there will be no prejudice to Mr. Mix from a stay because "[d]iscovery has not yet started and no depositions have occurred" (Mot. at 13), while Mr. Mix argues that a stay would unfairly disadvantage him by imposing "an unknown and indefinite delay in conducting discovery" (Resp. at 12).  Mr. Mix specifically contends that cell phone logs may be destroyed, witness memories may fade, and documents may become "misplaced" in the intervening time if the court imposes a stay, and he points to specific information regarding the potential destruction of cell phone records.  (*Id.* at 13); *cf. Reynolds v. Geico Corp.*, No. 2:16-cv-01940-SU, 2017 WL 815238, at *4 (D. Or. Mar. 1, 2017) ("Although plaintiff suggests that a stay would jeopardize the availability of witnesses, accuracy of testimony, and preservation of evidence, plaintiff has not provided any specific argument or evidence concerning why this would be so . . . .") (internal citation omitted)).  In addition, although the D.C. Circuit held oral argument on October 19, 2016, there is no indication of when it will issue an opinion and thus of how long a stay would

last.  *See ACA International*, Dkt.  Thus, the court finds that the delay will result in some

prejudice to Mr. Mix.  Moreover, even if the D.C. Circuit decides the legal questions

favorably to Ocwen, "factual disputes, such as whether an ATDS was used and whether

[Mr. Mix] provided [his] consent, will remain."  *Lathrop v. Uber Techs., Inc.*,

No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016).  All of these facts

support denying a stay.

      The second factor also favors denying a stay.  Ocwen's burden of producing

discovery and preparing for trial (*see* Mot. at 13-16) does not demonstrate a clear case of

hardship or inequity, *see Lockyer*, 593 F.2d at 864 ("[B]eing required to defend a suit,

without more, does not constitute a clear case of hardship or inequity."); *Lathrop*, 2016

WL 97511, at *4 (concluding that although the defendant may suffer hardship in the form

of additional discovery, that "potential hardship" did not merit a stay); *Hiemstra v. Credit

One Bank*, No. 2:16-cv-02437-JAM-EFB, 2017 WL 4124233, at *2 (E.D. Cal. Sept. 15,

2017) (finding that "costly discovery" alone does not demonstrate a compelling need for

imposing a stay).  In addition, "Ocwen will still be required to produce discovery to settle

the factual disputes regarding its autodialing technology and [Mr. Mix's] alleged

revocation of consent no matter the outcome of *ACA International*."  *Franklin v. Ocwen

Loan Servicing, LLC*, No. 17-cv-02702-JST, 2017 WL 4922380, at *4 (N.D. Cal. Oct. 31,

2017); *see also Montegna v. Ocwen Loan Servicing, LLC*, No. 17-CV-00939-AJB-BLM,

2017 WL 4680168, at *3 (S.D. Cal. Oct. 18, 2017) (stating that the defendant had "not

demonstrated this instance as one of the rare circumstances where a court may compel a

//

party in one case to stand aside while a litigant in another settles the rule of law that could define the rights of both" (internal quotation marks and emphasis omitted)).

The third factor, however, tips slightly in favor of granting a stay. A stay while awaiting the D.C. Circuit's decision could save litigation costs and preserve court resources by providing guidance on relevant legal issues. *See Reynolds*, 2017 WL 815238, at *4 (concluding that "a stay may simplify the issues in this case and conserve judicial resources").

On balance, the court finds a stay unwarranted. The prejudice to Mr. Mix from a stay coupled with Ocwen's unpersuasive showing of hardship by moving forward with the litigation before the *ACA International* ruling outweigh the minimal preservation of resources a stay would facilitate. The court therefore denies Ocwen's motion to stay.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Ocwen's motion to dismiss or to stay (Dkt. # 24). The court DISMISSES Mr. Mix's negligence claim as inadequately pleaded but grants him leave to amend consistent with the scope of this order no later than seven (7) days of the date of this order.

Dated this 17th day of November, 2017.

JAMES L. ROBART
United States District Judge